

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 08 CR 625 |
| v. ) | |
| ) | |
| CARLOS CRUZ, JOEL D. PEREZ, and ) | Hon. Charles R. Norgle |
| ALEXANDER VASQUEZ, JR., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

CHARLES R. NORGLE, District Judge

Before the Court is Defendants Joel D. Perez's ("Perez") and Alexander Vasquez's ("Vasquez") (collectively "Movants") Joint Motion to Quash Arrest and Suppress Evidence. For the following reasons, the Motion is denied without a hearing.

## I. BACKGROUND

### A. Facts

In its Response to the Motion, the government has submitted the following version of the events of August 4 and 5, 2008. Over that two-day period, a cooperating source ("CS") engaged in a series of consensually recorded telephone calls with Defendant Carlos Cruz ("Cruz") in order to arrange for the sale of one kilogram of cocaine. This controlled transaction was to occur at a Shell gas station in Arlington Heights, Illinois on August 5, 2008. At approximately 5:30 p.m. on that date, the CS arrived by car at the gas station. Vasquez arrived a few minutes later and parked his Pontiac Bonneville in an adjacent Denny's restaurant parking lot. Shortly thereafter, Cruz and Perez arrived at the gas station in a Dodge Nitro. After conversing briefly with Cruz

1

and Perez, the CS left the gas station by car, expecting Cruz and Perez to follow. Cruz and Perez did not follow the CS, but instead walked to Vasquez's car. Perez entered the Bonneville, while Cruz remained outside. After conferring with law-enforcement agents, the CS called Cruz to ask why he and Perez were not following. Cruz indicated that he did not wish to follow the CS, and requested that the CS instead bring the cocaine to him. Law enforcement agents then quickly arrived at the scene by car with lights and sirens activated, and parked directly behind the Bonneville. The agents exited their vehicles and identified themselves as "police" or "DEA." Cruz was apprehended without incident. At this point Vasquez put the Bonneville into reverse gear, rammed two law enforcement vehicles repeatedly, then drove out of the Denny's parking lot onto Algonquin Road. Perez remained in the Bonneville's passenger seat.

The Movants concede that they were present along with Cruz at the gas station and the Denny's parking lot on August 5, 2008, but they insist that the law enforcement agents had no reason to suspect them of any criminal activity. After Cruz's and Perez's conversation with the CS at the gas station, Movants assert, Cruz and Perez terminated any potential drug transaction and walked towards the Denny's parking lot, where Vasquez innocently sat in the Bonneville's driver seat. Perez entered the Bonneville, while Cruz remained outside. At that point, Movants assert, a number of unmarked vehicles arrived with no lights or sirens operating. Two of these vehicles then slammed into the sides of the Bonneville without warning while all of the vehicles were moving. Having no reason to believe the individuals who had rammed the Bonneville were law enforcement agents, Movants argue, they justifiably fled the scene.

The parties agree that a short time after these events, law enforcement agents apprehended Movants in the parking lot of a nearby McDonald's restaurant. A subsequent

2

search of the Bonneville uncovered $23,000 hidden in a trap compartment located behind the steering wheel.

The government's version of these events is based on a detailed eleven page, twenty-seven paragraph affidavit of Drug Enforcement Administration Special Agent James C. Chupik. Movants did not submit an affidavit from either Perez or Vasquez with their Motion, but included a five sentence affidavit from Vasquez with their Reply brief. Vasquez's skeletal affidavit provides virtually no support for the factual assertions made in the instant Motion. However, as the Court will explain, it can adjudicate this Motion without making a determination as to which parties' version of the events is more credible.

**B. Procedural History**

The government charged Cruz, Perez, and Vasquez in a two-count indictment with conspiring to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and attempting to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846. Cruz pled guilty on April 30, 2009. On March 6, 2009, Movants filed the instant Motion to Quash Arrest and Suppress Evidence. Movants assert that they were seized without probable cause when law enforcement agents allegedly rammed Vasquez's Bonneville. The Motion is fully briefed and before the Court.

## II. DISCUSSION

Movants make two arguments in support of their Motion, both of which are unavailing. They first assert that they were seized when law enforcement agents collided with the Bonneville. Supreme Court and Seventh Circuit case law, however, clearly indicates that fleeing suspects are not seized until they cease their flight and submit to law enforcement agents. California v.

Hodari D., 499 U.S. 621, 626 (1991) ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not."); United States v. Bradley, 196 F.3d 762, 768 (7th Cir. 1999) ("[A] seizure is the sum of two parts. First, there must be either a show of authority or a use of force; and second, the show of authority or use of force must have caused the fleeing individual to stop attempting to escape."); Kernats v. O'Sullivan, 35 F.3d 1171, 1178 n.4 (7th Cir. 1994) ("a fleeing suspect – even one who is confronted with an obvious show of authority – is not seized until his freedom of movement is terminated by intentional application of physical force or by the suspect's submission to the asserted authority."). Here, the parties agree that following the confrontation in the Denny's parking lot, Movants fled. Whether or not their flight was precipitated by law enforcement agents intentionally ramming the Bonneville is not relevant, as there was clearly no seizure at that point. Movant's "freedom of movement [was] terminated" only when agents apprehended them in the McDonald's parking lot; it is therefore there that the seizure occurred. See Kernats, 35 F.3d at 1178 n.4.

Second, Movants assert that they were seized without probable cause. Law enforcement agents have probable cause to arrest a suspect when the totality of the circumstances presented to him or her "are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." United States v. Sawyer, 224 F.3d 675, 678-79 (7th Cir. 2000). Probable cause "is a fluid concept that relies on the common-sense judgment of the officers." United States v. Reed, 443 F.3d 600, 603 (7th Cir. 2006). Officers confronted with suspicious circumstances may "draw reasonable inferences based on their training and experience" when determining whether probable cause exists. Id. (citing United States v. Breit, 429 F.3d 725, 728

4

(7th Cir. 2005)). Here, law enforcement agents were presented with a situation in which: a suspect (Cruz) had arranged to purchase cocaine from a CS; a controlled buy had been set up; Cruz arrived at the agreed upon location with another individual (Perez); after conversing with the CS, Cruz walked towards another individual (Vasquez) in a nearby parking lot; Cruz stood by Vasquez's car while Perez entered that car; Cruz requested that the CS bring cocaine to him; and finally, after being confronted by law enforcement, the Movants fled. On this set of facts, there is no question that probable cause existed to arrest the Movants. See United States v. Schaafsma, 318 F.3d 718, 722 (7th Cir. 2003) ("Probable cause requires only a substantial chance of criminal activity, not an actual showing of such activity.").

In closing, the Court determines that there is no need for an evidentiary hearing on this Motion. Movants have the burden of establishing that such a hearing is necessary. United States v. Rodriguez, 69 F.3d 136, 141 (7th Cir. 1995). Because they have submitted only Vasquez's bare-bones affidavit in support of their factual assertions, they have failed to meet this burden. See id. ("That burden could be met only upon the presentation of definite, specific, detailed, and nonconjectural facts.") (citation and internal quotation marks omitted).

### III. CONCLUSION

For the foregoing reasons, Perez's and Vasquez's Joint Motion to Quash Arrest and Suppress Evidence is denied without a hearing.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 13, 2009